# Illinois Official Reports

## Appellate Court

---

### *People v. Salgado*, 2019 IL App (1st) 171377

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GIOVANNI SALGADO, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-17-1377 |
| Filed<br>Rehearing denied | September 9, 2019<br>October 4, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-16566; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Aliza R. Kaliski, of State Appellate Defender's Office, and Scott F. Main, of DePaul University Legal Clinic, both of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.


**OPINION**

¶ 1        Defendant appeals his conviction for defacing the identification marks of a firearm (720 ILCS 5/24-5(b) (West 2016)). He challenges the trial court's denial of his motion to quash arrest and suppress the evidence and asks this court to reverse his conviction outright. We affirm.

¶ 2                                    BACKGROUND

¶ 3        On October 16, 2016, Chicago police sergeant Ricky Rivera and his partner were directed to patrol the 3800 block of West 30th Street due to retaliatory shootings that had occurred in the area between rival gangs. As Sergeant Rivera drove down the block in an unmarked squad car, he made eye contact with one of two males walking in public on the sidewalk. They immediately broke apart and walked in different directions. One of them, defendant, was adjusting and grabbing at something in his waistband.

¶ 4        The police drove past defendant, stopped the car, and Sergeant Rivera exited the passenger side. He walked toward defendant with his body camera rolling. Defendant continued to grasp at the object in his waistband.

¶ 5        Upon reaching defendant and at close range, Sergeant Rivera asked him if he had any weapons in his possession. Defendant answered "no" and continued to walk past him. Sergeant Rivera asked defendant to lift up his T-shirt so he could "see." Defendant responded, "I don't have to" and simultaneously grabbed the object in his waistband. Sergeant Rivera immediately placed his hand on the object, which was covered by defendant's T-shirt. It was a "9mm Hi-Point" handgun, loaded with 10 live rounds. The serial numbers on the gun had been removed. Defendant was placed under arrest.

¶ 6        The State charged defendant with one count of defacing the identification marks of a firearm (720 ILCS 5/24-5(b) (West 2016)) (count I) and eight counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (West 2016)) (counts II through IX). Defendant filed a motion to quash his arrest and suppress the evidence, and the trial court heard his motion and conducted a bench trial at the same time. The State called Sergeant Rivera.

¶ 7        Sergeant Rivera testified that he was directed to patrol the 3800 block of West 30th Street on October 16, 2016. There had been "recent aggravated batteries with firearms in that location" involving the "Two-Six street gang" and the "Latin Kings." The shootings were "retaliatory," and the location was designated a "high threat gang conflict zone."

¶ 8        As he drove down the block with his partner, Sergeant Rivera observed defendant and another Hispanic male look in the direction of the unmarked squad car, break apart, and walk in different directions. Defendant grabbed and adjusted an item in his front waistband.

¶ 9        Sergeant Rivera exited the car, and as he approached, defendant "continued to grasp an item in his front waistband." At that point, Sergeant Rivera believed that defendant "was in possession of a firearm" or "had a weapon." There was a "clearly visible" bulge in his

waistband. Sergeant Rivera conducted a "pat-down" of defendant "for [his] safety" and recovered a firearm from his front waistband. It was loaded with "ten live rounds," and the serial numbers used to identify the firearm had been "scratched out."

¶ 10    Sergeant Rivera wore a body camera during the incident and testified that it accurately depicted his encounter with defendant on October 16, 2016. The body camera footage was entered into evidence and played in open court. After the parties stipulated that an Illinois State Police sergeant, if called to testify, would affirm that defendant did not have a valid FOID card or concealed carry license on October 16, 2016, the State rested its case. Defendant's motion for a directed finding was denied, and he rested his case without presenting any evidence.

¶ 11    The trial court briefly expressed its reasoning on the record and denied defendant's motion to quash and suppress the evidence. The trial court found him guilty of counts I and II: defacing the identification marks of a firearm (720 ILCS 5/24-5(b) (West 2016)) and AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2016)). The trial court merged count II into count I and sentenced defendant to 25 months in prison. All of his posttrial motions were denied.

¶ 12    Defendant appeals and challenges the trial court's decision to deny his suppression motion. He further claims that the outright reversal of his conviction is warranted. Defendant does not challenge the probable cause for his arrest.

¶ 13                                      ANALYSIS

¶ 14    In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. See *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). We will not reverse the trial court's factual findings unless they are against the manifest weight of the evidence, and we review the trial court's ultimate ruling as to whether suppression is warranted *de novo*. *People v. Williams*, 2016 IL App (1st) 132615, ¶ 32. Defendant bears the burden of showing that the search and seizure were unlawful. *People v. Lawson*, 2015 IL App (1st) 120751, ¶ 28.

¶ 15    The fourth amendment to the United States Constitution and the Illinois Constitution of 1970 guarantee the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). However, it is well-recognized that there are exceptions to the warrant requirement. See *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) ("[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable").

¶ 16    One exception to the warrant requirement, that the parties place at issue here, was recognized in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* held that " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot,' " the officer may briefly stop the suspicious person and make " 'reasonable inquiries' " aimed at confirming or dispelling his suspicions. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 30).

¶ 17    *Terry* further held that " '[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' " the officer may conduct a patdown search in order " 'to determine whether the person is in fact carrying a weapon.' " *Id.* (quoting *Terry*, 392 U.S. at 24). This

limited search for weapons is designed to allow the officer to pursue his investigation without fear of violence; it is not a means by which to gather evidence of a crime. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001).

¶ 18    Before we conduct a *Terry* analysis, we must first determine whether the fourth amendment was implicated in this case. See *People v. Johnson*, 2019 IL App (1st) 161104, ¶ 14 (the fourth amendment is not implicated until a person is seized). Defendant claims that "he was seized for the purposes of the Fourth Amendment immediately upon the officers' arrival at the 3800 block of West 30th Street, when Officer Rivera exited a still moving vehicle to approach [him]." We reject this argument out of hand.

¶ 19    A seizure does not occur "simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Sergeant Rivera and his partner drove past defendant and stopped the car, and following his exit, Sergeant Rivera took a number of steps before he was even in a position to ask any questions of defendant. For fourth amendment purposes, Sergeant Rivera's exit from his car was a nonevent.

¶ 20    The State takes the position that defendant was not seized until Sergeant Rivera "placed his right hand over defendant's hand *** to effectuate a pat-down." Our review of the record in this case reveals that in a matter of seconds after Sergeant Rivera asked his first question of defendant ("if he had any weapons on him"), defendant grabbed the item in his waistband and Sergeant Rivera followed suit. We find that, regardless of whether the fourth amendment was implicated in that short time frame, Sergeant Rivera's actions were justified.

¶ 21    Defendant claims that Sergeant Rivera conducted a *Terry* stop and a *Terry* search and challenges both events as unreasonable. "Whether an investigatory stop is valid is a separate question from whether a search for weapons is valid." *Flowers*, 179 Ill. 2d at 263. Accordingly, we address the issues separately.

¶ 22    Following a hearing on defendant's motion to quash arrest and suppress the evidence, the trial court made a series of factual findings, the first of which was that the 3800 block of West 30th Street on October 16, 2016, was a high-crime area. This finding was not against the manifest weight of the evidence.

¶ 23    Sergeant Rivera testified that the 3800 block of West 30th Street on October 16, 2016, was a "known branch of the Two-Six" gang. There were "recent gang related aggravated batteries with firearms in that location," and Sergeant Rivera explained that the shootings were "retaliatory" and involved the "Latin Kings." Sergeant Rivera was on "directed patrol," and the location was "designated a high threat gang conflict zone."

¶ 24    This testimony went wholly unchallenged by defense counsel, and the trial court found it credible, uncontroverted, and unimpeached. See *People v. Jackson*, 2012 IL App (1st) 103300, ¶ 30 (an officer's uncontradicted and undisputed testimony, when accepted by the trial court, is sufficient to establish that the incident occurred in a high-crime area). Accordingly, the 3800 block of West 30th Street on October 16, 2016, was high crime area.

¶ 25    The fact that the stop occurred in a high crime area is a relevant contextual consideration in any *Terry* analysis. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). A police officer is "not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.*

¶ 26    But to be clear, defendant's mere presence in the 3800 block of West 30th Street on October 16, 2016, standing alone, is not enough to justify a *Terry* stop. See *People v. Harris*, 2011 IL

App (1st) 103382, ¶ 12. We are mindful that well-intentioned, law-abiding citizens live in Chicago neighborhoods that are plagued by gang violence and crime and that merely walking on the sidewalk in those areas does not, on its own, justify an investigatory stop. But we have no such situation here. Conduct, not mere presence in the high crime area, is at issue in this case.

¶ 27    After hearing Sergeant Rivera's testimony and watching his body camera footage, the trial court found that defendant "depart[ed]" upon making eye contact with Sergeant Rivera and, at each stage of the encounter, that defendant made repeated "movements towards his right waistband." These findings were not against the manifest weight of the evidence.

¶ 28    Sergeant Rivera testified that he made eye contact with defendant and saw him "break apart" from another individual and walk in different directions after "[t]hey both looked in the direction of the oncoming unmarked vehicle." Sergeant Rivera saw defendant "grasp and adjust an item in his front waistband" and he "continued to grasp" the item as Sergeant Rivera walked toward him.

¶ 29    The body camera footage reveals that defendant was nervous, fidgety, and held the inside of his left arm close to the item and in a manner that could support the reasonable inference that defendant was attempting to shield the item from view. Sergeant Rivera believed, at this point, that defendant was in possession of a "firearm" or "weapon."

¶ 30    The trial court's factual findings that defendant "depart[ed]" upon making eye contact with Sergeant Rivera and, at each stage of the encounter, that defendant repeated "movements towards his right waistband" found ample support in the record. The body camera footage brought the encounter to life, and with Sergeant Rivera's testimony, there is no basis for unsettling the findings here.

¶ 31    Nervous, evasive behavior or unusual conduct is a pertinent factor in determining reasonable suspicion. *Wardlow*, 528 U.S. at 124; *People v. Marchel*, 348 Ill. App. 3d 78, 80 (2004). The determination of reasonable suspicion "must be based on commonsense judgment and inferences about human behavior." *People v. Timmsen*, 2016 IL 118181, ¶ 13.

¶ 32    We hold that, in light of the trial court's factual findings and given the totality of the circumstances, defendant's presence in a high crime area where retaliatory gunfire had been exchanged between rival gangs, his actions upon seeing the police, and more importantly, defendant's unusual conduct-based fixation with an item in his waistband together gave rise to a reasonable suspicion that criminal activity was afoot such that Sergeant Rivera's actions were justified. *Johnson*, 2019 IL App (1st) 161104, ¶ 15 (the totality of the circumstances are to be considered when determining the validity of a stop).

¶ 33    We reject out of hand defendant's argument that Sergeant Rivera's actions were unjustified because the "[a]rticulable suspicion to conduct a *Terry* stop cannot rest on the possible observation of a gun alone." As explained above, defendant's *conduct* in a high crime area, not "the possible observation of a gun alone," gave rise to a reasonable suspicion that he was committing or about to commit a crime. In any event, our supreme court vacated the judgment in the case defendant cites in support of this argument. See *People v. Horton*, No. 122461 (Ill. Nov. 22, 2017) (supervisory order); *People v. Simmons*, 2016 IL App (1st) 131300, ¶ 116 (citing *Kelch v. Watson*, 237 Ill. App. 3d 875, 877 (1992) (a vacated judgment is void)).

¶ 34    Defendant suggests that Sergeant Rivera could not act upon his reasonable suspicion that criminal activity was afoot until he ruled out the possibility that defendant possessed the

- 5 -

appropriate licensure to lawfully carry a firearm throughout the State of Illinois. The suggestion is rejected. The possibility that an innocent person may be briefly stopped by a police officer was considered by the United States Supreme Court in *Terry* and deemed an acceptable risk that may be undertaken in the face of a reasonable suspicion of criminal activity. See *Wardlow*, 528 U.S. at 126 ("*Terry* accepts the risk that officers may stop innocent people").

¶ 35    Accordingly, defendant has failed to carry his burden of showing that Sergeant Rivera's actions were unreasonable under the fourth amendment. Hence, a *Terry* stop was warranted under the totality of the circumstances.

¶ 36    We separately hold that the limited search of defendant's person for weapons was warranted. A limited search for weapons is warranted if a police officer has a reason to believe that the defendant is armed and dangerous. *Flowers*, 179 Ill. 2d at 266. However, reason to believe is not certainty: " '[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *People v. Colyar*, 2013 IL 111835, ¶ 36 (quoting *Terry*, 392 U.S. at 27).

¶ 37    *Terry* makes clear that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24.

¶ 38    Here, in physical response to Sergeant Rivera's initial inquiry as to whether defendant "had any weapons on him," defendant placed his hand on and grabbed the very item that Sergeant Rivera had reason to believe, given defendant's prior consistent conduct in a high crime area, was a "firearm" or a "weapon." See *People v. Richardson*, 2017 IL App (1st) 130203-B, ¶ 27 (finding an officer's "belief that the defendant was most likely hiding a weapon," based on the defendant's hand gesture towards his waistband, "indicated a sufficient suspicion to warrant the pat-down search" (internal quotation marks omitted)).

¶ 39    The body camera footage of the incident clearly reveals the circumstances that Sergeant Rivera faced such that, as provided in *Terry*, it would appear to be clearly unreasonable to find that Sergeant Rivera could not place his hand on the item in defendant's waistband in an apparent effort to prevent its potential removal and use against him and the other officers. Defendant has shown that Sergeant Rivera may not have been certain that defendant was armed, but he certainly has not shown that a reasonably prudent man under the same circumstances would not have been warranted in the belief that his safety was in danger. *Colyar*, 2013 IL 111835, ¶ 36. Accordingly, defendant has failed to carry his burden, and his argument must fail.

¶ 40    The trial court's ultimate ruling on defendant's motion to quash arrest and suppress the evidence stands and reversal is not warranted. Defendant's conviction is affirmed.

¶ 41                                    CONCLUSION

¶ 42    Accordingly, we affirm.

¶ 43    Affirmed.