2023 IL App (1st) 200917-U

No. 1-20-0917

Order filed September 18, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 7197 |
| | ) | |
| DESHAWN WALLACE, | ) | The Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Police had reasonable suspicion to believe defendant possessed a firearm, which supported the protective putdown and subsequent search of his person. We affirmed the denial of defendant's suppression motion. In addition, there was sufficient evidence to support the finding that defendant was guilty of being an armed habitual criminal due to his predicate offenses.

¶ 2    Following a bench trial, defendant Deshawn Wallace was found guilty of being an armed habitual criminal, in that he possessed a firearm with two prior qualifying felonies, and he was sentenced to six years in prison. Defendant appeals contending that the trial court erred in denying his motion to suppress because police lacked reasonable suspicion to frisk and then

search defendant for weapons. Defendant also contends the State failed to establish the statutory elements of the armed habitual criminal statute beyond a reasonable doubt, therefore requiring reversal of his conviction. We affirm.

¶ 3                                 BACKGROUND

¶ 4     Defendant was arrested after police stopped the vehicle in which he was a passenger and ultimately found him in possession of a handgun for which he did not have a Firearm Owners Identification (FOID) card (430 ILCS 65/0.01 *et seq.* (West 2018)) or a Concealed Carry License (430 ILCS 66/1 *et. seq.* (West 2018)), as required. See *People v. McMichaels*, 2019 IL App (1st) 163053, ¶ 28. Defendant was charged with one count of being an armed habitual criminal, along with other offenses.

¶ 5     Prior to trial, defendant filed a motion to suppress the inventoried weapon alleging police lacked probable cause to conduct a search. Defendant called Chicago Police Officer Edward Zeman, whose direct testimony and cross-examination revealed that he and his partner, a fellow Chicago police officer, were on patrol May 2, 2019, due to a conflict between two street gangs that had resulted in several shootings. Around 11 p.m., they stopped a car that had no rear brake light. Officer Zeman, dressed in plain clothes, approached the front passenger side, where defendant was seated, while his partner approached the driver's side. As Officer Zeman approached, he smelled alcohol and fresh cannabis emanating from the vehicle's interior, which contained three people, including defendant. Officer Zeman noted that it smelled like alcohol and asked if they had been drinking, to which the rear passenger responded, yes. Officer Zeman stated, "it smells like Remy" (a type of alcohol), and the rear passenger said yes and laughed. He then observed a bag of fresh cannabis inside between the front passenger seat and center console,

2

just next to defendant's leg. Officer Zeman noted that it was illegal to have open alcohol inside the car; the narcotics and alcohol gave him a basis to search the vehicle.

¶ 6 During the encounter, defendant would not make direct eye contact with Officer Zeman, his breathing was heavy, as his chest was moving up and down, and he "took a big swallow," all of which Officer Zeman found to be unusual. While defendant's right hand was in his right lap area, his left hand was moving by his left waist, near the center console towards the cannabis. Officer Zeman then observed a "large bulge" in defendant's front jacket pocket. That is, he could see both the bulge and cannabis from his vantage point outside the vehicle.

¶ 7 Officer Zeman requested that defendant step out of the vehicle, but defendant did not comply and appeared hesitant to exit the car. Defendant then asked why and offered that he could simply give Officer Zeman his identification instead. Officer Zeman testified again that defendant's behavior was abnormal. He feared defendant might have a weapon, so he reached into the car and performed a protective pat-down over the bulged area of defendant's jacket while defendant was still seated. Officer Zeman felt "a hard metal object consistent with a handgun" and then recovered what was later revealed to be a loaded Bursa Thunder semiautomatic handgun from defendant's jacket pocket as Officer Zeman called over his partner. His partner handcuffed defendant, and Officer Zeman searched the vehicle. Defendant admitted that he did not have FOID card or Concealed Carry License. At the suppression hearing defendant did not establish when he made this admission.

¶ 8 The vehicle's driver was not arrested, although Officer Zeman believed she received a ticket from his fellow officer. It was later revealed that the stop occurred at 3758 W. Chicago

Avenue, and police did indeed recover and inventory the cannabis, but not any alcohol.[1] When

Officer Zeman first approached the vehicle, the back window was down, but not the window by

defendant. Defendant also did not bend down under his seat or make any "furtive movements."

Following this evidence, the defense rested.

¶ 9    The State moved to admit Officer Zeman's body worn camera (body cam), capturing the

traffic stop, and it was entered into evidence following a stipulation and played before the court.

Consistent with Officer Zeman's testimony, the video shows him approaching the passenger-side

of the vehicle and affirms his interchange with the back right passenger, whose window was

almost half-way down. Officer Zeman queried, "You all just drinking?" to which the back right

passenger answered yes, while looking at Officer Zeman. When Officer Zeman further stated, "It

smells like Remy, right" that same passenger laughed, looked away, and said, "Yeah, exactly."

The video also depicts Officer Zeman shining his flashlight and looking into both the rear

passenger seat and the front passenger seat. During this time, defendant gave a sideways glance

to Officer Zeman and then looked to his left and then straight forward.

¶ 10    The video further shows that as the driver exited the vehicle under the other officer's

direction, Officer Zeman opened the front passenger door. Defendant continued to stare straight

forward and only made eye contact after Officer Zeman asked him to "hop out for me."

Defendant hesitated. Instead of complying with the request, he looked down and then straight

forward while moving his left hand from the top of the center console down to the area,

apparently between his seat and the console, and he looked down toward that area a second time.

Defendant also took a visible gulp before turning to Officer Zeman and asking, "for what, you

---

[1]This evidence was revealed at trial, where Officer Zeman briefly testified as a witness for the defense. For the sake of readability, we have included it in the fact section involving the suppression motion.

want my ID?" Officer Zeman said no, that he asked defendant to step out because there was open alcohol in the car, although he did not "care about the little bit of weed or whatever that you got there, right." Defendant looked down as Officer Zeman moved closer to defendant and performed the protective pat down over defendant's right jacket pocket (which showed a slight bulge), unzipping the pocket, and recovering the handgun. Defendant remained seated with his seatbelt on the entire time. Officer Zeman took the handgun and apparently unloaded it while his partner handcuffed defendant, leading him to the police vehicle.

¶ 11 Defendant argued in closing that the police lacked probable cause to support the vehicle stop and search of defendant. The defense noted the officer found the cannabis was of no concern, and defendant had the right to question why he was being asked to exit the vehicle. The defense argued, "[i]t was purely a stop to search anybody," and there was no indication the officer was in danger. The State countered that officers conducted a valid traffic stop for a broken brake light, then smelled cannabis and alcohol emanating from the car, observed defendant's unusual behavior, as well as the bulge in his right pocket, all of which supported the pat-down and search.

¶ 12 The trial court denied defendant's motion to suppress. The court found Officer Zeman testified credibly and consistently with the body cam video. The court found the traffic stop was justified by the brake light violation and further found police had reasonable suspicion to perform a protective pat-down of defendant while inside the vehicle given the visible bulge and defendant's actions. The court explained, "what I find is a significant point i[s] that when [Officer Zeman] reached in[,] he went directly to that jacket pocket and patted it down[,] and he explained the reason for that is because he saw the bulge there that corroborates the officer." Defendant filed a motion to reconsider, which was denied.

¶ 13    At trial, the parties stipulated that if called, Officer Zeman would testify as at the previous suppression hearing. They also stipulated to the body cam video and records revealing that defendant did not possess a FOID card or a concealed carry license. Finally, the State entered certified copies of conviction showing defendant previously had been convicted of armed robbery (08 CR 12591) and unlawful use of a weapon by a felon (15 CR 5613), and the defense stipulated that these were defendant's convictions. The State rested, and the defense called Officer Zeman, who added a few details about the traffic stop. The defense then rested.

¶ 14    At the trial's conclusion, the court found defendant guilty of being an armed habitual criminal (count 1), and the other counts were merged into count 1.[2] Defendant moved for a new trial, arguing the court erred in denying the motion to suppress, but this was denied. The court sentenced defendant to six years in prison for being an armed habitual criminal. This appeal followed.

¶ 15                              ANALYSIS

¶ 16    Defendant first challenges the denial of his suppression motion. When reviewing the trial court's ruling on a motion to suppress evidence, we ordinarily apply a two-part standard of review. *People v. Eubanks*, 2019 IL 123525, ¶ 33. We give great deference to the court's factual findings and will reverse them only if they are against the manifest weight of the evidence, while we review *de novo* the court's legal ruling on whether evidence should be suppressed. *People v. Cregan*, 2014 IL 113600, ¶¶ 22, 23. A reviewing court may consider all trial evidence in

---

[2]The report of proceedings shows that the trial court found defendant guilty on counts 1-6, and merged all counts into count 1 (armed habitual criminal). However, the court noted prior to sentencing that it had found defendant guilty of counts 1-4 and 6-7, which merged into count 1. The court stated it found defendant not guilty of count 5. The half sheet shows the trial court found defendant guilty of counts 1-4 and counts 6-7, with all counts merging into count 1. The mittimus shows the trial court found defendant guilty of counts 1-4 and count 6, with all counts merging into count 1. We find the oral pronouncement at sentencing controls, and therefore defendant was found guilty of counts 1-4 and 6-7. See *People v. Clark*, 2014 IL App (1st) 123494, ¶ 21.

determining whether the court's decision denying a motion to suppress was correct. *People v. Murdock*, 2012 IL 112362, ¶¶ 35-36. To prevail at the trial level, the defendant bears the burden of producing evidence and establishing a *prima facie* case that the search and seizure was unreasonable before the burden then shifts to the State. *Cregan*, 2014 IL 113600, ¶ 23; *People v. Thornton*, 2020 IL App (1st) 170753, ¶ 23. Also, the ultimate burden always remains with the defendant. *Thornton*, 2020 IL App (1st) 170753, ¶ 23.

¶ 17    Defendant does not challenge the initial stop of the vehicle in which he was a passenger,  as there was probable cause for the police to believe a traffic violation occurred. See *People v. Hackett*, 2012 IL 111781, ¶ 20. Rather, defendant contends that police lacked reasonable suspicion to perform the subsequent protective pat-down of him. He maintains there was no reason to believe he was armed and dangerous.

¶ 18    Both the United States Constitution and the Illinois Constitution protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Johnson*, 237 Ill. 2d 81, 89 (2010); *Thornton*, 2020 IL App (1st) 170753, ¶ 23. Probable cause exists where the facts and circumstances, considered as a whole, are sufficient to justify the belief by a reasonably cautious person that the defendant is or has been involved in a crime. *People v. Hopkins*, 235 Ill. 2d 453, 472 (2009). Nonetheless, a police officer may detain a person without having a warrant with probable cause to arrest. *Thornton*, 2020 IL App (1st) 170753, ¶ 26. Specifically, a limited exception to the warrant requirement under *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), permits a police officer to briefly stop (and therefore necessarily seize) a person for temporary questioning if he reasonably believes the person has committed, or is

about to commit, a crime. *Thornton*, 2020 IL App (1st) 170753, ¶ 26. Notably, the usual traffic stop is analogous to a *Terry* investigative stop. *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 19 In addition, it's well established that following a lawful traffic stop, police can, as a matter of course, order the driver and any passengers out of the vehicle while completing the stop without violating any fourth amendment protections. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *People v. Sorenson*, 196 Ill. 2d 425, 433 (2001). During the stop, officers may also question the driver and passengers, provided the inquiries do not unnecessarily extend the duration of the stop. *People v. Sutton*, 2020 IL App (1st) 181616, ¶ 21. An officer may then subject a person to a limited search for weapons ("frisk") only if he reasonably believes that person is armed and dangerous. *Sorenson*, 196 Ill. 2d at 433; 725 ILCS 5/108-1.01 (West 2018). This search is for the protection of the police officer and others in the vicinity, not to gather evidence. *Id*. at 432. Whether the vehicle stop was valid is a separate inquiry from whether the weapons frisk was valid. *Sorenson*, 196 Ill. 2d at 433.

¶ 20 For the frisk, reasonable suspicion must be based on commonsense judgment and inferences about human behavior. *People v. Salgado*, 2019 IL App (1st) 171377, ¶ 31. Nervous, evasive behavior or unusual conduct is a pertinent fact in determining reasonable suspicion, as is the fact that the stop occurred in a high crime area. *Id*. ¶¶ 25, 31. Moreover, a "bulge in a validly stopped suspect's clothing is a circumstance which is generally sufficient to warrant a frisk." *People v. Morales*, 221 Ill. App. 3d 13, 18 (1991). In judging a police officer's conduct, we apply an objective standard, considering whether the facts available to the officer at the moment of the seizure justify the action taken. *Hackett*, 2012 IL 111781, ¶ 29.

¶ 21 Here, the totality of the circumstances justified Officer Zeman's limited search for weapons from defendant. See *Salgado*, 2019 IL App (1st) 171377, ¶ 32; *McMichaels*, 2019 IL

App (1st) 163053, ¶¶ 22-23. First, Officer Zeman was justified in ordering the occupants out of the vehicle while completing the stop, and moreover, had probable cause to search the vehicle for alcohol given the smell emanating from inside and that the passenger essentially admitted consuming alcohol therein. See *Wilson*, 519 U.S. at 415; *Sorenson*, 196 Ill. 2d at 433.

¶ 22    Second, defendant's hesitation following this lawful request, combined with Officer Zeman's observations that defendant refused to make direct eye contact during the encounter, exhibited heavy breathing, made a large gulp, and moved his left hand by the center consul and his left waist, and significantly, had a large bulge in his front jacket pocket, presented Officer Zeman with reasonable suspicion that defendant was presently armed and dangerous. See *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (finding a large bulge in the defendant's jacket pocket justified the protective pat down); *McMichaels*, 2019 IL App (1st) 163053, ¶23; *Salgado*, 2019 IL App (1st) 171377, ¶¶ 31-32. This was so much so that Officer Zeman reached into the car to perform the protective pat-down over the bulged area as defendant was seated, and Officer Zeman specifically testified that he feared defendant had a weapon. *Cf. People v. Smith*, 2015 IL App (1st) 131307, ¶ 36 (noting, the defendant's furtive movement in the vehicle, alone, was insufficient to support the vehicle search, where the officer failed offer specific and articulable facts supporting he feared for his safety); *People v. Surles*, 2011 IL App (1st) 100068, ¶¶ 10, 40 (finding protective pat-down search unlawful where officers testified they do "protective pat downs on basically everybody" and the defendant did not display conduct creating fear or threat of violence).

¶ 23    Officer Zeman then felt a hard metal object consistent with a handgun, and on further search, his suspicions were confirmed since defendant was indeed carrying a semiautomatic handgun, admittedly without the appropriate licensure. In addition, it was late evening, officers

were patrolling the area due to a gang conflict resulting in several shootings, and Officer Zeman testified that in his experience, defendant's behavior was unusual. See *Salgado*, 2019 IL App (1st) 171377, ¶ 25; *cf. People v. Davis*, 352 Ill. App. 3d 576, 581-83 (2004) (finding the officer had no reason to believe the defendant was armed and dangerous, where the defendant was compliant with the officer's requests, it was not a high-crime area, the defendant only exhibited some nervousness, and he could have placed his hand in his pocket for any number of innocent reasons).

¶ 24    Again, "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon." *Sorenson*, 196 Ill. 2d at 432; *Salgado*, 2019 IL App (1st) 171377, ¶ 17. Indeed, it's well-recognized that roadside encounters between police and suspects are especially hazardous. *Smith*, 2015 IL App (1st) 131307, ¶ 24. Plus, we give due weight to the specific reasonable inferences an officer is entitled to draw from the facts in light of his experience. *Sorenson*, 196 Ill. 2d at 433. The trial court did just that, finding Officer Zeman credible and his actions objectively reasonable based on the specific and articulable facts that defendant was illegally armed. See *Wilson*, 519 U.S. at 411 (noting, the touchstone of a fourth amendment analysis is always reasonableness); *McMichaels*, 2019 IL App (1st) 163053, ¶ 22 (noting the *Terry* standard). While any of these factors alone might not have been sufficient to justify the search, together they were. The opposite conclusion is not warranted, and therefore, the trial court's finding was not against the manifest weight of the evidence. See *Davis*, 352 Ill. App. 3d at 579. Defendant did not fulfill his burden of producing evidence establishing that the search

and seizure were unreasonable. See *Cregan*, 2014 IL 113600, ¶ 23; *Thornton*, 2020 IL App (1st) 170753, ¶ 23.

¶ 25 In reaching this conclusion, we reject defendant's suggestion that the officers were required to first determine if defendant was carrying a FOID card and Concealed Carry license before conducting the protective pat-down, search for weapons, and detention pursuant to *Terry*. In so arguing, defendant relies on two cases which have since been vacated and do not represent authoritative law. See *Salgado*, 2019 IL App (1st) 171377, ¶ 33 (rejecting a similar argument). He also relies on an Illinois dissent and inapposite cases from other jurisdictions. Thus, he has not adequately supported his contention with binding or relevant authority, violating our supreme court rules. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring an appellant's argument to contain the contentions of the appellant and reasons therefor, with citation of the authorities relied on, and noting points not argued are forfeited and shall not be raised in the reply brief).

¶ 26 Notwithstanding that, the existence of a possible innocent explanation, like defendant's possession of the required gun licenses, did not negate reasonable suspicion in this case given the totality of factors presented to the police. See *supra*, ¶¶ 21-23; *McMichaels*, 2019 IL App (1st) 163053, ¶ 32; *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 39. Defendant's hesitancy and unusual behavior, together with his failure to volunteer that he had the requisite gun licensure, inspired suspicion that defendant illegally possessed the gun. See *McMichaels*, 2019 IL App (1st) 163053, ¶ 38; *People v. Hood*, 2019 IL App (1st) 162194, ¶ 71. Absolute certainty was not required, and the frisk in this case was no more than necessary to secure officer safety given the practical considerations of everyday life, as a dead or shot police officer cannot request licensure. See *Salgado*, 2019 IL App (1st) 171377, ¶¶ 36; *McMichaels*, 2019 IL App (1st) 163053, ¶¶ 34-35 (noting, public policy demands that police must be safe in the performance of their duties).

¶ 27    Last, defendant did not offer evidence or argument about when the detention in this case transformed into an arrest, or exactly when officers established that defendant lacked the requisite licensure. See *People v. Colyar*, 2013 IL 111835, ¶ 46 (handcuffing does not automatically transform a *Terry* stop into an illegal arrest); *McMichaels*, 2019 IL App (1st) 163053, ¶ 37. As a result, his claim that officers *arrested* him first without inquiring about the gun licensure is not well-taken. As set forth, the burden of establishing an unreasonable search and seizure remained with defendant.

¶ 28    Defendant also argues the body cam footage did not corroborate Officer Zeman's testimony that defendant was breathing heavily or in an unusual pattern. He maintains the body cam footage established that defendant avoided making eye contact in part due to Officer Zeman waving a flashlight in his face.

¶ 29    Having viewed the body cam video in full, we disagree. The video shows defendant displaying nervous, evasive behavior that was very much at odds with the back passenger, who made ready eye contact with Officer Zeman, notwithstanding that the flashlight was shown in his face several times. This weakens defendant's flashlight argument. We also note that the video mostly shows defendant from a side view and the shoulder up, so would not capture heavy breathing or every detail perceived by Officer Zeman. For example, there were periods when defendant was obscured by the glare of the flashlight or Officer Zeman was not directly facing him with his body worn camera. Notwithstanding that, the video does capture the visible gulp defendant takes before further delaying his exit from the vehicle. Moreover, the trial court found Officer Zeman credible, and that the video corroborated Officer Zeman's testimony in significant respects without contradicting it. We cannot say that determination is against the manifest weight of the evidence.

¶ 30    For all these reasons, defendant's fourth amendment claim fails.

¶ 31                              *Armed Habitual Criminal*

¶ 32    Defendant next contends he was improperly convicted of being an armed habitual criminal because the State failed to establish a necessary predicate conviction. Defendant notes the facts are not in dispute but only whether those facts satisfy the elements of the armed habitual criminal statute. The interpretation of a statute presents a question of law, which we review *de novo*. *People v. Bradford*, 2016 IL 118674, ¶¶ 14-15; *People v. Allen*, 322 Ill. App. 3d 724, 725 (2001). Section 24-1.7 of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.7 (West 2018)) provides:

"(a) A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher."[3] *Id*. Being an armed habitual criminal is a Class X felony. *Id*.

---

[3] " 'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2-5 (West 2018).

¶ 33    Here, defendant's conviction for armed habitual criminal was based on the two prior predicate offenses of unlawful use of a weapon by a felon (case No. 15 CR 5613) and armed robbery with a firearm (Case No. 08 CR 12591). Armed robbery with a firearm is a forcible felony under the armed habitual criminal statute. See 720 ILCS 5/24-1.7(1) (West 2018); 720 ILCS 5/2-8 (West 2018).[4] Defendant challenges only the State's reliance on the armed robbery offense. He argues that he was age 17 when he committed the armed robbery with a firearm, and at present, any resultant guilty finding would be a juvenile adjudication, rather than a "conviction." See 705 ILCS 405/5-120 (West 2018); *People v. Stewart*, 2022 IL 126116, ¶ 22; see also *People v. Taylor*, 221 Ill. 2d 157, 176 (2006) (noting, juvenile adjudications do not constitute convictions). He therefore contends the State failed to prove beyond a reasonable doubt that his armed robbery offense was a predicate "conviction" under section 24-1.7 of the armed habitual criminal statute. We disagree.

¶ 34    We look first to the plain language of section section 24-1.7, so as to give effect to the legislature's intent. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *People v. McChriston*, 2014 IL 115310, ¶ 18. Where, as here, the language of the statute is clear and unambiguous, we will apply the statute without resort to further aids of statutory construction. *Id.* In addition, we will not read into the statute exceptions, conditions, or limitations not expressed by the legislature. *In re N.C.*, 2014 IL 116532, ¶ 50. Section 24-1.7 provides that a defendant is guilty of being an armed habitual criminal "after having been convicted" of several enumerated predicate felonies, including "a forcible felony as

---

[4] " 'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2018).

defined in Section 2-8 of this Code."[5] "Having been convicted" is a perfect passive participle construction and used to emphasize that a first action (here, a conviction) has been completed before the second action begins (being found an armed habitual criminal). See www.thelatinlibrary.com/101/Participles.pdf. Grammatically, it is the equivalent of saying, "if he/she *was* convicted."

¶ 35    In addition, under subsection (a)(1) of the statute ("a forcible felony as defined in Section 2-8 of this Code"), the predicate offense still must constitute a crime when the defendant illegally possesses the very firearm that triggers application of the armed habitual criminal statute. For example, armed robbery was a forcible felony when defendant committed that crime in 2008, and it remained a forcible felony when defendant committed the offense of being an armed habitual criminal in 2019. See 720 ILCS 5/2-8 (West 2018). As such, it could rightfully serve as a qualifying predicate conviction underlying defendant's present offense. Indeed, it is well established that a defendant found guilty of being an armed habitual criminal is punished for the new and separate crime of possessing a firearm, not for his prior acts or convictions. *People v. Bailey*, 396 Ill. App. 3d 459, 463 (2009); *People v. Leonard*, 391 Ill. App 3d 926, 931 (2009). The prior convictions serve only as elements of the new crime. *Id.*; see also *People v. Davis*, 408 Ill. App. 3d 747, 751 (2011) (noting, "a defendant's prior crimes count as elements of a violation of the armed habitual criminal statute").

¶ 36    Here, it is beyond dispute that defendant committed the predicate offense of armed robbery in 2008 at age 17, and the guilty finding for that offense resulted in a conviction in adult criminal court (not juvenile court). Later, in 2014, the legislature amended the juvenile statute, so

---

[5] "Conviction" means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury. 720 ILCS 5/2-5 (West 2018).

that an armed robbery offense committed at age 17 would result in only a juvenile adjudication. See *Stewart*, 2022 IL 126116, ¶ 7. While defendant would like us to read that amendment into the armed habitual criminal statute, we cannot. The amendment is not retroactive, and defendant's "invitation is one for the legislature, not this court." *People v. Irrelevant*, 2021 IL App (4th) 200626, ¶ 37; 705 ILCS 405/5-120 (West 2018); see also 5 ILCS 70/4 (West 2018). In other words, no rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include. *People v. Smith*, 2016 IL 119659, ¶ 28. In view of the plain language of the armed habitual criminal statute and the fact that it references past convictions for predicate offenses, we conclude that defendant was "convicted" of armed robbery in 2008 (which remained a forcible felony in 2019), and this was sufficient to serve as a predicate offense to being an armed habitual criminal. *Accord Irrelevant*, 2021 IL App (4th) 200626, ¶¶ 35-37; see also *Fitzsimmons v. Norgle*, 104 Ill. 2d 369, 372-73 (1984) (a juvenile defendant subject to adult court may have a "conviction").

¶ 37     In reaching this conclusion, we reject defendant's reliance on *People v. Gray*, 2021 IL App (1st) 191086. In *Gray*, the court held that the defendant's narcotics delivery offense, committed when he was age 17 in 2002, could not serve as a predicate for being an armed habitual criminal based on the plain language of subsection (a)(3) of the statute. See 720 ILCS 5/24-1.7(a)(3) (West 2018) (noting, a predicate offense is "any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that *is punishable* as a Class 3 felony or higher" (Emphasis added.)). *Gray* observed that the narcotics offense, if committed in 2016, would have resulted in a juvenile adjudication and not a conviction due to the 2014 legislative amendment to the juvenile statute. See *Stewart*, 2022 IL 126116, ¶ 7. The court reasoned, "In

view of the changes to the Juvenile Court Act of 1987, for most offenses age of the defendant operates as an element of the offense." *Gray*, 2021 IL App (1st) 191086, ¶ 15. Honing in on that, plus the present tense language of subsection (a)(3), *Gray* held that the 2002 drug offense was not a predicate offense, and the State failed to prove defendant guilty of being an armed habitual criminal. *See also Dawson*, 2022 IL App (1st) 190422, ¶ 48 (holding armed robbery by a 17-year-old was not a predicate offense for being an armed habitual criminal).

¶ 38      *Gray* is not controlling. We disagree with *Gray* that age operates as an element of the armed habitual criminal offense. Not every prerequisite to a conviction constitutes an element to an offense. Rather, there are two essential elements in all criminal offenses, (1) a voluntary act (720 ILCS 5/4-1 (West 2018)) and (2) a mental state (720 ILCS 5/4-3 (West 2018)). *People v. Taylor*, 68 Ill. App. 3d 680, 684 (1979) ("Criminal liability, with the exception of so-called strict liability crimes, is dependent upon the simultaneous occurrence of the defendant's requisite mental state and the criminal act").

¶ 39      Under section 24-1.7 of the Code, an armed habitual criminal is a person who knowingly possesses a firearm after already being convicted of two qualifying offenses. See *id*.; see also 720 ILCS 5/4-2 (West 2018) (defining possession as a voluntary act); *People v. Ramirez*, 2023 IL 128123, ¶ 22 (noting, "when a possessory offense does not prescribe a particular mental state and is not an absolute liability offense, knowledge is the appropriate mental state"). Thus, the *elements* of the offense include (1) knowing possession of a firearm and (2) the aforementioned two past qualifying convictions. Age is simply not included in the "voluntary act," and as such, is not an element of the offense.[6] In fact, the statute does not contain any reference to age. *Cf.* 730 ILCS 5/5-4.5-95 (West Supp. 2021). Rather, "[a]ge *** is merely the factor which

---

[6]Age also is not an element of a forcible felony. See 720 ILCS 5/2-8 (West 2018).

authorizes the application of the juvenile system," which is part of the unified circuit court. *In re Greene*, 76 Ill. 2d 204, 212-13 (1979). Whether a person is tried in juvenile or criminal court is a matter of procedure. *People v. DeJesus*, 127 Ill. 2d 486, 498 (1989). Thus, as the State notes, "defendant's age does not change the fact that he was 'convicted,' nor does it change the fact that armed robbery is a forcible felony."

¶ 40     We also find defendant's reliance on *Stewart*, 2022 IL 126116, misplaced. *Stewart*, while addressing a similar issue involving predicate offenses committed by juveniles, dealt with an entirely different statute, that involving Class X sentencing under the Unified Code of Corrections:

"(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 forcible felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 41     Although the Class X sentencing statute similarly required at least two predicate offenses before it could be utilized, that statute addresses a sentencing enhancement and not substantive offenses. See *Leonard*, 391 Ill. App 3d at 932**.** The Class X sentencing statute "simply prescribe[s] the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions," but the convictions are not elements of the most recent felony offense. *People v. Dunnigan*, 165 Ill. 2d 235, 242 (1995). The State has no burden to prove these convictions beyond a reasonable doubt. *People v. Levin*, 157 Ill. 2d 138, 156 (1993). Plus, in evaluating the enhancement, the Class X

sentencing statute expressly calls for a reassessment of the prior conviction (using the language, "an offense that contains the same elements as an offense now *** classified in Illinois"), whereas the armed habitual criminal statute does not. Moreover, in *Stewart*, the supreme court found the Class X sentencing statutory language ambiguous and the matter resolved by subsequent legislation, which added a subsection elucidating that the first qualifying offense for Class X sentencing must have been committed when the person was 21 years of age or older. The court found this legislation was intended to clarify the statute's meaning. *Stewart* therefore held that "defendant's 2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing." *Id.* ¶ 22.

¶ 42    As set forth, we do not find the statute in this case ambiguous, and even if we did, there is no subsequent legislation resolving the matter in defendant's favor. See *People v. Dawson*, 2022 IL App (1st) 190422, ¶ 23, *appeal pending* (discussing the legislative history of the armed habitual criminal statute); see also *In re J.L.*, 236 Ill. 2d 329, 341 (2010) (noting, "where the legislature has employed a term in one place and excluded it in another, it should not be implied where excluded").

¶ 43    We further note that *Gray* was issued on October 12, 2021. The supreme court issued *Stewart* on October 20, 2022, and then granted the petition for leave to appeal in *Gray* a month later, on November 30, 2022. See *People v. Gray*, No. 127815 (Nov. 30, 2022). To us, this suggests that *Stewart* is not controlling in regards to the armed habitual criminal statute.

¶ 44    Last, we reject defendant's contention that his defense counsel was constitutionally ineffective. Defendant argues that counsel was ineffective "for stipulating that [he] had been convicted of two qualifying felony offenses," but his claim fails for several reasons. First, we observe that defense counsel merely stipulated that defendant had been convicted of the two

prior offenses but did not stipulate they were "qualifying." Second, to succeed on such an ineffective assistance claim, the defendant must establish that counsel's representation was deficient and but for the deficiency, there is a reasonable probability the trial result would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36. In this case, defendant cannot show that counsel's stipulation was objectively unreasonable under prevailing professional norms given the state of the law at the time of his February 26, 2020, trial. See *id.*; *People v. English*, 2013 IL 112890, ¶ 34. At the time of defendant's trial, "case law squarely supported the principle that a conviction obtained when a criminal defendant was a minor could be used as a qualifying predicate offense, and that a conviction is a conviction, regardless of the criminal defendant's age."[7] See *People v. Williams*, 2021 IL App (1st) 191615, ¶ 30. Again, *Gray* was not decided until 2021. We note that counsel is not incompetent for failing to accurately predict that existing law will change. *English*, 2013 IL 112890, ¶ 34. Defendant therefore has failed to establish defense counsel's deficiency, so his ineffective assistance of counsel claim must fail.

¶ 45                                CONCLUSION

¶ 46    For the reasons stated, we affirm the judgment of the circuit court.

¶ 47    Affirmed.

---

[7]We note that *People v. Miles*, 2020 IL App (1st) 180736, which is the only case that could have conceivably supported defendant's current argument, was decided on January 17, 2020, but rehearing was denied on March 25, 2020, after defendant's trial. *Miles* also addressed the Class X sentencing statute, not the armed habitual criminal statute.