2024 IL App (1st) 230252-U

No. 1-23-0252

Order filed June 17, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 125 |
| | ) | |
| QUINTIN ATKINS, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for unlawful use of a weapon by a felon (UUWF) is affirmed over his contentions that an armed robbery committed when he was 16 years old may not serve as a predicate felony for UUWF, that the trial court misapprehended the relevant sentencing range, and that the trial court abused its discretion by not departing from sentencing guidelines.

¶ 2    In a blind plea, defendant Quintin Atkins pled guilty to one count of unlawful use of a weapon by a felon (UUWF) and two counts of aggravated unlawful use of a weapon (AUUW). After merging the AUUW counts into the UUWF count, the trial court imposed a sentence of seven

years in prison. On appeal, defendant contends that the trial court erred by relying on an offense that occurred when he was 16 years old to "convict" him both of UUWF and of "Class 2" AUUW. Defendant further contends that the trial court misapprehended the sentencing range when it determined there was a seven-year presumptive minimum for UUWF. Finally, defendant contends that the trial court abused its discretion when it failed to consider that mitigating circumstances warranted imposing a sentence below seven years. For the reasons that follow, we affirm.

¶ 3    Defendant's conviction arose from an incident that occurred on November 28, 2020, in Chicago. According to the stipulated factual basis for defendant's plea, on that date, officers responded to a call of shots fired. When they arrived on the scene, an individual pointed at defendant and said he had a firearm in his waistband. The officers approached defendant for a field interview. Defendant indicated that he had a gun and that he "took the gun off of his friend, who was just shot." The officers recovered a loaded handgun from defendant's waistband and placed him into custody.

¶ 4    Following arrest, defendant was charged by indictment with one count each of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2020)) (count I), UUWF (720 ILCS 5/24-1.1(a) (West 2020)) (count II), AUUW premised on not possessing a concealed carry license (720 ILCS 5/24-1.6(a)(1), (3)(A-5) (West 2020)) (count III), and AUUW premised on not possessing a firearm owner's identification card (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2020)) (count IV). Two prior convictions—manufacture or delivery of a controlled substance in case No. 13 CR 270401 and armed robbery in case No. 02 CR 1998201—were listed as the predicate offenses for AHC. The armed robbery conviction in case No. 02 CR 1998201 was listed as the single predicate offense

for UUWF and, in both counts charging AUUW, as the basis for the State seeking to sentence defendant as a Class 2 offender.

¶ 5    Defendant filed a motion to dismiss count I, arguing that, because he was 16 years old when he committed armed robbery in 2002, that crime could not be used as a predicate offense for AHC. Following argument on the motion, the trial court dismissed count I. Counsel asked for a continuance so that defendant could consider an offer from the State.

¶ 6    At the next court date, defendant's attorney withdrew, and the trial court allowed defendant to proceed *pro se*. Defendant filed a motion to dismiss the remaining counts of his indictment, arguing that, because he was a juvenile in 2002, the State could not use his 2002 armed robbery as a predicate offense for the charges of UUWF and AUUW. The trial court denied the motion, reasoning that, although defendant was a juvenile in 2002, he was prosecuted as an adult.

¶ 7    After denying defendant's motion, the trial court informed defendant that he needed to answer the State's motion for discovery so as to put the State on notice if he had any affirmative defenses. Defendant responded, "Basically, on the elected matter, it is on camera. I am already pleading guilty to it. The gun is off a dead man's body. I had to defend myself." Defendant and the court then engaged in the following colloquy:

"THE COURT: Why are you setting this for trial if you are pleading guilty?

THE DEFENDANT: I am asking the State. I am ready to plead guilty on that charge right now.

THE COURT: As to counts two, three and four on 21 CR 00125, how do you plead to those counts?

THE DEFENDANT: I plead guilty, Judge.

- 3 -

THE COURT: All right. Did you execute a jury waiver by any chance?

THE DEFENDANT: No. I understand they are supposed to do a presentence investigation report, Judge.

THE COURT: I will make sure we get a presentence investigation report done. They are going to come and interview you. You understand that?

THE DEFENDANT: Yes.

Can I also offer this into evidence as adult criminal history that classifies me as a Class III for this case, the elected matter?

THE COURT: We will do that at sentencing.

THE DEFENDANT: Okay. Thank you."

¶ 8     The trial court read the charges aloud. Among other things, the court stated that the charge of UUWF was "punishable by a penitentiary sentence from 3 to 14 years." Defendant indicated that he understood each charge and its possible penalties and was pleading guilty. However, he also stated, "Judge, I am pleading guilty, but I don't understand how [the State] is using a juvenile armed robbery to enhance." The trial court answered, "You can look at that. I am asking how do you plead." Defendant replied that he was pleading guilty. He also executed a jury waiver.

¶ 9     The trial court admonished defendant regarding the rights he was giving up by pleading guilty. The parties stipulated to the factual basis for the plea, as set forth above. The stipulation also included the following statement: "The defendant is a convicted felon *** under 02 CR 1998201." The trial court found that defendant's plea was made knowingly and voluntarily and that a factual basis existed for the plea. The court entered a finding of guilty on counts II, III, and IV, and ordered a presentence investigation (PSI) report.

¶ 10    The State asked the court to "briefly pass the case" so that it could discuss an offer with defendant concerning a separate case. When the matter was recalled, the State reported that defendant had rejected its offer on the separate case. The State further reported, "[Defendant] did inquire about the court's previous 402 offer on the case where he blind pled this morning. [Defendant] and I discussed an offer that involved both cases. However, he has since rejected that offer, so that offer is withdrawn."

¶ 11    After further discussion of the separate case, defendant queried as to how presentence custody credit would be applied. In the course of answering defendant's questions, the trial court told him that the State was offering, and "I would sentence you to," five years in prison "on those counts that you pled guilty to." The court would impose a three-year sentence on the separate case, for a total of eight years in prison. It repeated twice more that defendant would receive a five-year sentence in the instant case. When the court asked defendant what he would like to do, he answered, "Yeah, I will take it."

¶ 12    The trial court proceeded to give defendant guilty plea admonishments for the separate case. When the court asked him if he had signed a jury waiver, defendant responded by asking about presentence custody credit and requesting PSI reports for both cases. The following exchange ensued:

"THE DEFENDANT: Can you order a presentence investigation report?

THE COURT: If there is an agreement, you can waive it. If you want a presentence investigation report, what I will do then is have a hearing after reviewing the presentence investigation report. That is what we call a blind plea. Then it would be up to me what I think a fair sentence would be.

(Brief pause.)

THE DEFENDANT: How do I know I am getting my time credit?

THE COURT: I am going to think about this for just a minute and I have to decide if I am going to go along with this agreement. You didn't sign the jury waiver.

I think what I am going to do is set it for trial, State.

[ASSISTANT STATE'S ATTORNEY]: Okay.

THE COURT: If you don't mind.

[ASSISTANT STATE'S ATTORNEY]: That's fine, Judge.

THE COURT: I am going to strike the plea, and I am going to hold the elected case over for trial on January 31st."

¶ 13    The State indicated that it was withdrawing its offer. The court informed defendant that, after the PSI report was completed, the instant case would proceed to sentencing. The court stated, "I am not going along with any agreement. What I will do is after your jury trial [on the separate case], I will hear anything you have to say in mitigation on the case you pled guilty to, and if you win your other case, we won't address the sentencing. If you don't win the case, then I will sentence you on both."

¶ 14    When the case was called on January 31, 2023, the trial court summarized that defendant had entered a blind plea to counts II, III, and IV, and that there had been no agreement as to the sentence. After the parties acknowledged receipt of the PSI report, the State moved to amend it to include several prior convictions which had been unsealed. Other than one conviction for possession of a stolen motor vehicle in 2006, defendant's other prior convictions were all for possession of a controlled substance and were committed between 2008 and 2013. The State also

noted the predicate armed robbery identified in the indictment, case No. 02 CR 1998201, stating that it had "not ma[d]e the criminal history because that was sealed as well." Defendant objected to the State using the 2002 armed robbery "to enhance my Class 3 to a Class 2," asserting that the Juvenile Court Act of 2016 was retroactive. The trial court overruled the objection.

¶ 15    The PSI report also included defendant's version of the offense. In short, defendant related that he was at a block party when his friend was shot multiple times and killed. He ran to his friend to see if he was alive and to try to help. The shooters were approaching from an alley, so defendant took a gun off his friend's body and pointed it toward them. He stated, "I took it to defend myself. The police was [*sic*] coming. I put the gun on my hip and walked across the street. I never fled. I told the police I took it to defend myself."

¶ 16    The court asked defendant whether he had any evidence to present at the sentencing hearing. Defendant addressed the stipulated factual basis for the plea, stating that "they" killed his friend, and if he had not taken the gun off his friend's body, "they" would have killed him, too. The State indicated it was resting on the PSI report and stated, "Just for the record, there is a presumptive minimum of seven years on Counts—on Count 2. We had previously offered the defendant five." The State also reported that defendant was "extendable" based on three prior convictions from 2013 for Class 1 manufacture and delivery of a controlled substance. In mitigation, defendant argued that the 2013 convictions "all ran concurrent." He also argued that he should be sentenced as a Class 3 felon, as he "never had a forcible that would enhance my *** Class 3 UUW [*sic*] to a Class 2."

¶ 17    Finally, when given the opportunity to make a statement in allocution, defendant stated he had no choice but to take the gun, as "they would have loved to kill two people" and "[i]t was

either that or die." The trial court stated that, given the procedural posture of the case, it could not decide whether self defense was a viable defense. However, the court stated it would take self defense, "even if it's a mistaken belief in self defense," into account when imposing sentence.

¶ 18    The court sentenced defendant to seven years in prison on count II and merged counts III and IV. The court explained as follows:

> "I am going to impose the presumptive minimum in this case after, having considered the presentence investigation report, defendant's statement in allocution, which I've already mentioned, the arguments from both sides, the statutory and non statutory factors in aggravation and mitigation, whether or not are specifically mentioned by the State or by [defendant], I'm considering the defendant's history and the circumstances of the offense, and having due regard for the seriousness of the offense in which the defendant has pled guilty, sentence will be 7 years in the Illinois Department of Corrections."

¶ 19    Defendant asked for clarification regarding the class of the offenses charged in the indictment. The trial court answered that it had sentenced him as a Class 2 offender. Defendant replied, "Okay. I would like to put in a motion to object and appeal." The court responded that they were "not quite finished yet," and then admonished defendant regarding his right to appeal. Defendant thereafter submitted a written motion to reconsider sentence, arguing orally for Class 3 sentencing and for the court to impose the five-year sentence the State had "agreed to" earlier. The trial court denied the motion, stating that it was appropriate to sentence defendant as a Class 2 felon. Defendant filed a notice of appeal.

¶ 20    On appeal, defendant contends that the trial court erred by relying on an offense that occurred when he was 16 years old to "convict" him both of UUWF and of Class 2 AUUW; that

the trial court misapprehended the sentencing range when it determined there was a seven-year presumptive minimum for UUWF; and that the trial court abused its discretion when it failed to consider that mitigating circumstances warranted imposing a sentence below seven years.

¶ 21 As an initial matter, we note that Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) provides that no appeal from a judgment entered upon a guilty plea shall be taken unless the defendant, within 30 days of the date of sentencing, "files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." In general, the filing of a Rule 604(d) motion is a "condition precedent to an appeal from a judgment on a plea of guilty," and the failure to file a timely Rule 604(d) motion precludes this court from considering the appeal on its merits. *People v. Flowers*, 208 Ill. 2d 291, 300-01 (2003).

¶ 22 Here, defendant is not only raising sentencing issues. He is also challenging his plea. Yet, while he filed a motion to reconsider sentence, he did not file a motion to withdraw his guilty plea. Nevertheless, because defendant entered into a blind plea in this case, rather than a negotiated plea (see *People v. Diaz*, 192 Ill. 2d 211, 218 (2000) (in an "open" or "blind" plea, the defendant pleads guilty without receiving any promises from the State in return)), we may consider the merits of his non-sentencing arguments. See *People v. Rogers*, 364 Ill. App. 3d 229, 245-46 (2006). This is because the object of the contractual analysis that applies in appeals involving guilty pleas is to return the parties to the status quo that existed prior to the entry of the plea agreement and, where, as here, a defendant enters a blind guilty plea, returning to the status quo does not require that a defendant relinquish his guilty plea. *Id.* at 243-44 (citing *People v. Evans*, 174 Ill. 2d 320, 332 (1996)).

¶ 23 Next, with regard to procedural default, we address the State's assertion that defendant has waived all claims of error because he pled guilty. In making this argument, the State relies on *People v. Jones*, 2021 IL 126432. In *Jones*, the 17-year-old defendant entered a negotiated guilty plea of 50 years in prison for a single count of murder. *Id.* ¶¶ 1, 4. He subsequently challenged a mandatory sentencing scheme that was never actually applied to him due to the plea agreement. *Id.* ¶¶ 7, 17, 18.

¶ 24 The *Jones* court held that, "[i]f the statutory sentencing scheme had actually been applied in this case to set [the defendant's] life sentence, [his] argument would have presented a claim that we could have reviewed on its legal merits." *Id.* ¶ 18. The court further held that, by entering a plea agreement, the defendant foreclosed any claim of error, as a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones. *Id.* ¶ 20. The court reasoned that plea agreements are contracts "and principles of waiver apply equally to them." *Id.* ¶ 21. It further explained that entering into a contract is, generally, a bet on the future, and that pleading guilty " 'permits a defendant to gain a present benefit in return for the risk that he may have to [forego] future favorable legal developments.' " (Alteration in original.) *Id.* (quoting *Dingle v. Stevenson*, 840 F.3d 171, 175 (4th Cir. 2016)). Accordingly, the court concluded that the defendant's knowing and voluntary guilty plea had waived any constitutional challenge based on subsequent changes in the law. *Id.* ¶ 26.

¶ 25 We find *Jones* distinguishable for two reasons. First, unlike in *Jones*, defendant is challenging a sentence that was actually imposed rather than a sentence that "was never actually applied to him due to the plea agreement." *Id.* ¶¶ 7, 17, 18. See also *People v. Jean*, 2024 IL App (1st) 220807, ¶ 42. Second, in *Jones*, the defendant's postconviction claim hinged on a case that

was decided years after he pled guilty. Here, defendant did not plead guilty in reliance on "future favorable legal developments" and is not making a claim based on changes in the law that occurred subsequent to his plea. Rather, from the time the trial court allowed him to proceed *pro se*, defendant has claimed that, because he was a juvenile in 2002, the State could not use his 2002 armed robbery as a predicate offense for the charge of UUWF and to enhance his sentencing class for AUUW. See *People v. Johnson*, 2022 IL App (1st) 201371, ¶¶ 97-98.

¶ 26    In the trial court, defendant filed a written motion to dismiss the charges of UUWF and AUUW, persisted in his objection throughout his plea and at sentencing, and moved for reconsideration of his sentence on this basis. This court has held that "a guilty plea does not bar a claim on appeal 'where on the face of the record the court had no power to *** impose the sentence.' " *People v. Ruth*, 2022 IL App (1st) 192023, ¶ 13 (quoting *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 20). "In other words, if the claim does not contradict the terms of the indictment or plea agreement, we can consider it." *Id.* Here, defendant is not challenging the factual basis for his plea. Instead, he is challenging the UUWF statute's application to his admitted conduct and the State's power to punish him for AUUW as a Class 2 offender. Under these circumstances, defendant's guilty plea did not waive his arguments on appeal. See *id.*; *Patterson*, 2018 IL App (1st) 160610, ¶ 20.

¶ 27    As a final matter with regard to procedural default, we are mindful that our supreme court has recently held that, where a defendant stipulates that requisite prior qualifying convictions exist in his criminal record to sustain a charge, he is precluded from attacking or otherwise contradicting those stipulated facts on appeal. *People v. Gray*, 2024 IL 127815, ¶¶ 26-28. However, the holding of *Gray* does not apply in the instant case, in which defendant stipulated to the existence of his

2002 armed robbery, but did not stipulate that it was a "qualifying" offense. See *id.* ¶¶ 9, 27 (the defendant's stipulation that he "ha[d] two prior qualifying felony convictions for the purposes of sustaining the charge of armed habitual criminal" established that he had been convicted of two prior felonies "*and* that those felonies were qualifying felonies" (emphasis in original)).

¶ 28    Having concluded that defendant is not procedurally precluded from raising his claims in this court, we turn to the merits of his arguments. First, defendant argues that the trial court erred by relying on his 2002 armed robbery to "convict" him both of UUWF and of "Class 2" AUUW. The trial court sentenced defendant to seven years in prison on count II, the UUWF charge, and merged counts III and IV into count II. Therefore, since the sentence was only imposed on count II and a conviction requires a finding of guilt and a sentence, defendant stands convicted solely of UUWF. See 730 ILCS 5/5-1-12 (West 2022); *People v. Relerford*, 2017 IL 121094, ¶ 71 ("there is no final judgment in a criminal case unless a sentence has been imposed"). It follows that we have jurisdiction to consider the merits of defendant's challenge to the UUWF conviction. See *Relerford*, 2017 IL 121094, ¶ 71 (appellate court jurisdiction extends to final judgments).

¶ 29    Regarding defendant's AUUW claim, defendant was found guilty of AUUW, but not sentenced on that count. See 730 ILCS 5/5-1-12 (West 2022) (a conviction requires a finding of guilt and a sentence); *Relerford*, 2017 IL 121094, ¶ 71 ("there is no final judgment in a criminal case unless a sentence has been imposed"). As our supreme court explained in *Relerford*, the appellate court has no jurisdiction to determine the validity of "unsentenced convictions," as they do not constitute final judgments. *Relerford*, 2017 IL 121094, ¶¶ 71, 75. While we do have jurisdiction to remand for imposition of sentences on unsentenced guilty findings, that is only in situations where the trial court incorrectly merged those guilty findings into other offenses. *Id.* ¶¶

74, 75. Here, we are not presented with such a factual scenario. As such, in accordance with *Relerford*, we find that we lack jurisdiction to review the merits of the trial court's guilty findings on AUUW counts III and IV. See *People v. Jamison*, 2018 IL App (1st) 160409, ¶ 33-37 (finding a lack of appellate jurisdiction to consider the merits of a guilty finding on a properly merged count where no sentence was imposed).

¶ 30    Turning to the merits of defendant's challenge to the UUWF conviction, whether defendant's 2002 juvenile offense may serve as a predicate offense for UUWF is a question of statutory interpretation that we review *de novo. People v. Stewart*, 2022 IL 126116, ¶ 13. Section 24-1.11 of the Criminal Code of 2012 provides that a person commits UUWF if, as relevant here, he possesses on or about his person any firearm and he "has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020). Here, the predicate felony conviction for UUWF was defendant's 2002 armed robbery, which he committed when he was 16 years old.

¶ 31    In 2002, armed robbery committed with a firearm by a minor who was at least 15 years old was excluded from juvenile court jurisdiction and automatically transferred to adult criminal court. See 705 ILCS 405/5-130(1)(a) (West 2002). However, in 2014, the legislature expanded juvenile delinquency jurisdiction to 17-year-olds (see Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)) and, in 2016, amended section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act), to, among other things, eliminate armed robbery from the list of automatic transfer offenses (see Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a))). Defendant argues that, due to amendment of the Act, if his armed robbery case had been charged in 2020, it would

have resulted in a juvenile adjudication rather than an adult criminal conviction. He therefore asserts that his 2002 armed robbery conviction cannot serve as a predicate for UUWF.

¶ 32   As we observed in *People v. Wallace*, 2023 IL App (1st) 200917, ¶ 33, the best indication of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *Id.* (citing *People v. McChriston*, 2014 IL 115310, ¶ 15). Where statutory language is clear and unambiguous, this court will apply the statute without resort to further aids of statutory construction, and we will not read into the statute exceptions, conditions, or limitations that are not expressed by the legislature. *Id.* (citing *In re N.C.*, 2014 IL 116532, ¶ 50).

¶ 33   As noted above, section 24-1.11 provides that a person is guilty of UUWF if he possesses on or about his person any firearm and he "has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020). Our supreme court has found that "the proscription under section 24-1.1(a) is expressed in the past tense, thus applying to any person who 'has been convicted' of a felony." *People v. McFadden*, 2016 IL 117424, ¶ 27, *overruled on other grounds by In re N.G.*, 2018 IL 121939. In *Wallace*, we found that a similar phrase, "having been convicted," was the grammatical equivalent of saying "if he/she was convicted," and that the statute at issue was clear and unambiguous. *Wallace*, 2023 IL App (1st) 200917, ¶ 33. In keeping with *McFadden* and *Wallace*, we conclude that the phrase "has been convicted" is clear and unambiguous and may be applied without looking to extrinsic aids of statutory construction. See *id.*

¶ 34   Here, it is not disputed that, in 2002, defendant committed the predicate offense of armed robbery at age 16, or that the guilty finding for that offense resulted in a conviction in adult criminal court, as opposed to juvenile court. Over a decade later, the legislature amended the juvenile statute

so that an armed robbery committed at age 16 would result in a juvenile adjudication. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)); Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)). However, these amendments are not retroactive. See *People v. Hunter*, 2017 IL 121306, ¶¶ 17, 42; *Wallace*, 2023 IL App (1st) 200917, ¶ 35. As such, "no rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *Wallace*, 2023 IL App (1st) 200917, ¶ 35. Under the plain language of section 24-1.1, defendant had been convicted of armed robbery in 2002, and this was sufficient to serve as a predicate offense for UUWF. See *id.* (citing *Fitzsimmons v. Norgle*, 104 Ill. 2d 369, 372-73 (1984) (a juvenile defendant subject to adult court may have a "conviction")). Accordingly, defendant's arguments for reversal of his UUWF conviction fail.

¶ 35    Defendant's next contention is that the trial court misapprehended the applicable sentencing range when it determined there was a seven-year presumptive minimum for UUWF. He argues that the trial court could not use his 2002 armed robbery to impose the increased minimum because that charge would not result in an adult conviction today. He also asserts that the trial court should not have imposed a seven-year sentence because it had earlier advised him that UUWF was punishable by a penitentiary sentence of 3 to 14 years and "[i]ncreasing the minimum without ever admonishing [defendant], who was appearing *pro se*, of the possibility is fundamentally unfair." As relief, defendant requests that this court reduce his sentence to the five-year term "previously deemed appropriate by the State and court," or, in the alternative, remand for resentencing under the 3-to-14 year sentencing range.

¶ 36     Defendant acknowledges that "he did not argue that the presumptive minimum could not be imposed" in the trial court. Forfeiture aside, defendant urges us to consider this claim as a matter of second prong plain error.

¶ 37     The plain error doctrine is a narrow and limited exception to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To obtain relief under this doctrine in the sentencing context, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Id.* However, before addressing either prong, a defendant must first show that a clear or obvious error occurred. *Id.* If he fails to meet his burden, the procedural default will be honored. *Id.* Here, we find no clear or obvious error.

¶ 38     Defendant claims that the trial court erred by finding that his 2002 armed robbery constitutes a qualifying predicate offense so as to trigger elevated sentencing for UUWF. Such elevated sentencing is provided for in section 5-4.5-110 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-110 (West 2022)), which is titled "Sentencing Guidelines for Individuals with Prior Felony Firearm-Related or Other Specified Convictions," and which was enacted as part of the Safe Neighborhoods Reform Act (Pub. Act 100-3 (eff. Jan. 1, 2018)). Defendant's argument calls upon us to interpret that statutory section. See *People v. Richards*, 2021 IL App (1st) 192154, ¶ 12. The interpretation of a statute is a question of law, which we review *de novo*. *Id.* ¶ 13.

¶ 39     The relevant provision of the sentencing guideline statute at issue appears in subsection (c)(1) and states as follows:

> "When a person is convicted of unlawful use or possession of a weapon by a felon, when the weapon is a firearm, and that person has been previously convicted of a qualifying

predicate offense, the person shall be sentenced to a term of imprisonment within the sentencing range of not less than 7 years and not more than 14 years, unless the court finds that a departure from the sentencing guidelines under this paragraph is warranted under subsection (d) of this section." 730 ILCS 5/5-4.5-110(c)(1) (West 2022).

Among the enumerated qualifying predicate offenses is "armed robbery under Section 18-2 or similar offense under the Criminal Code of 1961." 730 ILCS 5/5-4.5-110(a)(I) (West 2022).

¶ 40    We have already determined that defendant's 2002 armed robbery may serve as a predicate offense for UUWF. Consistent with that finding, we conclude that the 2002 armed robbery may serve as a qualifying predicate offense for purposes of section 5-4.5-110(c)(1). As such, the trial court did not err or misapprehend the applicable sentencing range, as the minimum prison term sentence was indeed seven years. 730 ILCS 5/5-4.5-110(c)(1) (West 2022). Because there was no error, there was no plain error, and defendant's contention remains forfeited.

¶ 41    Defendant's final contention on appeal is that the trial court abused its discretion when it failed to consider its ability to depart from the presumptive minimum based on compelling mitigating circumstances that warranted a sentence below seven years. Specifically, he argues that a shorter sentence was warranted due to his age at the time of the predicate offense, his history of abuse, the length of time between his last criminal conviction in 2013 and this case, his non-violent adult criminal history, his family responsibilities, and his consistent employment up until his arrest. He further argues that the State implicitly acknowledged the mitigating nature of his conduct by proposing a five-year sentence earlier in the proceedings. As relief, defendant seeks modification of his sentence to five years, as "previously deemed appropriate by the court and the State."

¶ 42    A trial court has discretion to depart from the presumptive minimum set forth in the sentencing guidelines if it finds substantial and compelling justification that the sentence would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and not deprecate the seriousness of the offense. 730 ILCS 5/5-4.5-110(d)(1) (West 2022); *People v Jackson*, 2024 IL App (1st) 221095-U, ¶ 37; Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes). The statute contains a list of factors the court is to consider in order to determine whether a departure from sentencing guidelines might be warranted, such as the defendant's age at the time of the current or the predicate offense, the circumstances of the current and the qualifying predicate offense, the time that has elapsed since the qualifying predicate offense, the defendant's criminal history, and whether departure from the sentencing guidelines is in the interest of the defendant's rehabilitation. 730 ILCS 5/5-4.5-110(d)(2)(A)-(H) (West 2022).

¶ 43    At sentencing in the instant case, the trial court was in possession of the PSI report, which, as amended, included information on each of the subjects that defendant now claims would have warranted a downward departure from the sentencing guidelines. Moreover, the trial court specifically stated it was imposing the presumptive minimum sentence after having considered the PSI report, defendant's statement in allocution, the arguments from both sides, the statutory and non-statutory factors in aggravation and mitigation, defendant's history, and the circumstances and the history of the offense. A trial court is presumed to know the law, and, on review, we presume that the trial court followed all applicable laws unless the record indicates otherwise. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 85. "We must presume the trial court knew it could depart from the sentencing guidelines if it wished to do so." *People v. Dunn*, 2023 IL App (1st) 220675-

U, ¶ 52; Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 44     A sentencing determination will not be disturbed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). Sentences that fall within the permissible statutory range constitute an abuse of discretion only where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. The presumptive minimum sentence imposed in this case is not manifestly disproportionate to the nature of the offense or at great variance with the spirit and purpose of the law.

¶ 45     For the reasons explained above, we affirm the judgment of the circuit court.

¶ 46     Affirmed.